487 So.2d 424 (1986)
Charles Michael BRAGG, Appellant,
v.
STATE of Florida, Appellee.
No. 85-867.
District Court of Appeal of Florida, Fifth District.
May 1, 1986.
James M. Russ and Terrence E. Kehoe of James M. Russ, P.A., Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
This is an appeal from a conviction of criminal conspiracy. The information charged that appellant violated sections *425 893.135(1)(a)(2), 777.011 and 777.04, Florida Statutes (1983). The prosecutor alleged the following specific acts constituted the criminal conspiracy.
SPECIFICATIONS OF CHARGE: In that CHARLES MICHAEL BRAGG, STEVEN ANDREW HARRIS, DONALD EUGENE BURTON, and ROBERT RAY BARNETTE, on or about the 1st day of February, 1984 through and including the 14th day of April, 1984 within Volusia County, Florida, did knowingly and unlawfully agree, combine, conspire or confederate with one another and others unknown to the State Attorney for the Seventh Judicial Circuit of the State of Florida to commit the felony offense of Trafficking in Cannabis in an amount greater than two thousand (2,000) pounds, in violation of F.S. 893.135(1)(a)2; in that CHARLES MICHAEL BRAGG, within Volusia County, Florida negotiated and agreed with Patric Lawrence Boles for Patric Lawrence Boles to hire, secure or arrange for an aircraft and pilot to bring in excess of two thousand (2,000) pounds of cannabis into the United States from Columbia and for a secured off-load site in the United States for said cannabis; and in furtherance of and in support of said conspiracy, CHARLES MICHAEL BRAGG and ROBERT RAY BARNETTE arranged for financing of said conspiracy which included but was not limited to a loan from Jeri Fields and in support of said conspiracy and in furtherance thereof CHARLES MICHAEL BRAGG agreed with ROBERT RAY BARNETTE in Volusia County, Florida that ROBERT RAY BARNETTE would arrange transportation for the conspirators and said cannabis in Indiana and Kentucky and that DONALD EUGENE BURTON and STEVEN ANDREW HARRIS agreed to transport said cannabis in Kentucky in support of said conspiracy and in furtherance thereof; and in support of said conspiracy and in furtherance thereof did on April 13, 1984 with STEVEN ANDREW HARRIS, fly to Atlanta, Georgia and Nashville, Tennessee, with STEVEN ANDREW HARRIS using a fictitious name, in furtherance of and in support of said conspiracy on April 13, 1984 at the Atlanta airport CHARLES MICHAEL BRAGG paid Patric Lawrence Boles Thirty-Eight Thousand ($38,000.00) Dollars in U.S. currency as a down payment for said aforementioned aircraft and pilot in furtherance and in support of said conspiracy, and CHARLES MICHAEL BRAGG and STEVEN ANDREW HARRIS on April 13, 1984 used countersurveillance techniques at the Atlanta, Georgia Airport, in furtherance of and in support of said conspiracy on April 13, 1984, in support of said conspiracy and in furtherance thereof on April 13, 1984 ROBERT RAY BARNETTE picked up CHARLES MICHAEL BRAGG and STEVEN ANDREW HARRIS at the Nashville Airport and transported CHARLES MICHAEL BRAGG and STEVEN ANDREW HARRIS to the Ramada Inn in Evansville, Indiana where CHARLES MICHAEL BRAGG, STEVEN ANDREW HARRIS and ROBERT RAY BARNETTE were met by DONALD EUGENE BURTON in furtherance of and in support of said conspiracy; on or about April 14, 1984 ROBERT RAY BARNETTE and CHARLES MICHAEL BRAGG arranged for automobile license tag or tags to be borrowed from Ronald McKasson and/or David McKasson in Indiana to be placed on car or cars which were arranged to be used in transporting said cannabis in Kentucky in furtherance of and in support of said conspiracy; on April 14, 1984, CHARLES MICHAEL BRAGG, STEVEN ANDREW HARRIS, ROBERT RAY BARNETTE and DONALD EUGENE BURTON and other unknown coconspirators travelled in three (3) vehicles south into Kentucky from Indiana employing countersurveillance maneuvers in furtherance of and in support of said conspiracy to traffic in cannabis in excess of two thousand (2,000) pounds and in furtherance of and in support of said conspiracy on April 13, 1984 and April 14, 1984 CHARLES MICHAEL BRAGG had numerous telephone conversations *426 with Patric Lawrence Boles regarding the location of the aircraft and pilot being used in said conspiracy to traffic in cannabis in excess of two thousand (2,000) pounds.
Boiled down to essentials the information charges that appellant was involved in the importation of drugs from Colombia (although the information alleges Columbia we assume that was a typographical error) into the United States, more specifically into Kentucky and Indiana. The evidence at trial indicates appellant conspired with others to bring marijuana from Colombia to Kentucky.
The testimony at trial fills many volumes of transcripts and taken in a light most favorable to the state shows that appellant was involved in the illegal narcotic business to a significant degree. The question on appeal is whether the state alleged and proved a violation of a Florida law.
The pertinent statute which appellant is alleged to have conspired to violate is section 893.135(1)(a)(2), which says:
(1) Except as authorized in this chapter or in chapter 499 and notwithstanding the provisions of s. 893.13:
(a) Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, in excess of 100 pounds of cannabis is guilty of a felony of the first degree, which felony shall be known as `trafficking in cannabis.' If the quantity of cannabis involved:
* * * * * *
2. Is 2,000 pounds or more, but less than 10,000 pounds, such person shall be sentenced to a mandatory minimum term of imprisonment of 5 calendar years and to pay a fine of $50,000.
In order to be guilty of conspiring to violate that statute it must be proved that appellant agreed with another to commit a criminal offense while intending to commit the offense. Orantes v. State, 452 So.2d 68 (Fla. 1st DCA), rev. den. 461 So.2d 115 (Fla. 1984). The key word for purposes of this appeal is "offense." In order for appellant, or anyone, to be guilty of a criminal conspiracy it is necessary that the state prove the acts contemplated in the conspiracy would constitute an offense. In Florida, an offense is a violation of a Florida criminal statute. There is no Florida statute which proscribes the importation into or trafficking in drugs in Kentucky. Nor is there a Florida statute which proscribes the delivery of drugs into the United States. The statute the state alleges appellant conspired to violate is the one which prohibits sale, manufacture, delivery, possession and importation into this state. § 893.135(1)(a), Fla. Stat. (1983). The state did not prove appellant conspired to bring drugs into Florida or do any other acts mentioned in this statute in Florida.[1]
The problem involved in this case is the same problem created by the same state attorney in Jaffe v. State, 438 So.2d 72 (Fla. 5th DCA), rev. den. 436 So.2d 99 (Fla. 1983). As we said in Jaffe:
... we decide this case on the basis of the failure of the charging document to state a criminal cause of action under this statute and ... we conclude that even if the charging document accurately tracked the statute the proof at trial would not sustain those allegations, ...
All of the allegations and all of the proof have to do with appellant's having conspired to take drugs from Colombia to somewhere, Kentucky, in the United States. There are no specific facts in the allegations and there is no proof that appellant conspired to violate section 893.135(1)(a)(2) by agreeing with another to *427 bring the drugs into this state. This failure of pleading and failure of proof mandates our reversal of the conviction and order that appellant be discharged.
REVERSED.
UPCHURCH and COWART, JJ., concur.
NOTES
[1] The state introduced at trial the Kentucky statute regarding illegal drug control. The judge took judicial notice of that statute. There is nothing in the statute which proscribes the importing of drugs into Kentucky. This fact is interesting for two reasons. One, because the state was relying on Kentucky law for its case and two, because Kentucky law does not have any specific proscription against importation. Chapter 218A Uniform Narcotic Drug Act Criminal Law of Kentucky.